**UNITED STATES of America, Appellee,**

v.

**Francis Duane OSBORNE, Appellant.**

No. 77–1793.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1978.

Decided Aug. 22, 1978.

On Rehearing En Banc Nov. 2, 1978.

Certiorari Denied March 26, 1979.
See 99 S.Ct. 1539.

Duane L. Nelson, Lincoln, Neb., on brief for appellant.

Richard J. Nolan, Asst. U. S. Atty., Lincoln, Neb., for appellee; Edward G. Warin, U. S. Atty., Omaha, Neb., on brief.

Before GIBSON, Chief Judge, HEANEY and ROSS, Circuit Judges.

GIBSON, Chief Judge.

Francis Duane Osborne appeals from the denial of his motion to correct sentence. Osborne pled guilty to all ten counts of an indictment charging him with possessing and passing counterfeit United States currency. The District Court sentenced Osborne to a total of eight years and gave credit for all time spent in jail since federal custody commenced on these charges. On this appeal, Osborne raises only the issue of whether or not a previously set aside sentence of six years following guilty pleas to two counts of this indictment limited the sentence that could be imposed following a subsequent repleading and conviction on all ten counts. We conclude that it did not and affirm the conviction and the denial of the motion to correct sentence.

The indictment in this case was filed February 10, 1977, charging Osborne with ten separate offenses in separate counts. As a result of a plea bargain, defendant pled guilty before Judge Van Pelt[1] to two of the counts on April 8, 1977; the remaining counts were dismissed on May 20, 1977, when Osborne was sentenced. At the sentencing hearing before Judge Van Pelt, the Government kept its bargain and did not oppose a two-year sentence sought by Osborne. However, after considering a pre-sentence report and other information sup-

1. The Honorable Robert Van Pelt, United States Senior District Judge, District of Nebraska.

plied by Osborne and the Government, Judge Van Pelt sentenced Osborne to two concurrent terms of six years.[2]

On June 3, 1977, a hearing was held on Osborne's request that execution of the sentence be delayed and that he be released to attend to personal affairs. The hearing did not involve the circumstances of the plea bargaining; however, it became contentious and Judge Van Pelt advised Osborne that he would consider permitting him to withdraw his plea. On June 8, 1977, Osborne made an oral motion to withdraw his plea and it was granted. Judge Van Pelt also reinstated the previously dismissed counts of the indictment.

The case was reassigned to Judge Urbom[3] and trial was set for July 20, 1977. On July 19, Osborne pled guilty to all ten counts of the indictment. Although his attorney had advised him that the maximum sentence would be six years, Judge Urbom informed Osborne at the time of the plea in open court that the sentence could be greater than six years. Subsequently, Judge Urbom sentenced the defendant to concurrent terms of six years on the counts involved in the first plea and to terms of two years each on the remaining counts, to run concurrently with each other but consecutively to the six-year terms, for a total of eight years.

■ In an unpublished memorandum opinion, Judge Urbom carefully considered and rejected Osborne's motion for correction of sentence. The District Court found no double jeopardy or equal protection violation. In his memorandum opinion, Judge Urbom stated:

The reason for my adding two years to the sentence of six years was that in my judgment ten separate crimes are deserving of more punishment than two separate crimes and that an additional two-year sentence reasonably would reflect that fact.

Osborne appeals from that ruling and primarily relies on *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Pearce,* defendants were retried after their convictions were reversed. Upon the second conviction, they were sentenced to terms extending far beyond their original release dates. The Supreme Court held that neither the constitutional guarantee against double jeopardy nor the equal protection clause of the fourteenth amendment restrict the court's power to impose a more severe sentence, but that due process of law requires an affirmative showing of the basis for an enhanced sentence. In the present case the increased aggregate sentence was amply justified by Judge Urbom by the increased number of criminal convictions at the second guilty plea. Nor does *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), aid Osborne. *Perry* involved prosecutorial misconduct in securing a felony indictment when a defendant exercised a state right to a trial *de novo* in a North Carolina Superior Court on a previously filed misdemeanor charge arising out of the identical factual situation. In the present case, no additional or different crimes were charged. Rather, setting aside the guilty plea and reinstating the dismissed counts merely put the parties in the position they were in before the first guilty pleas.

2. If the Government had not kept its part of the plea bargain, the case would be in a very different posture. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The Government properly presented information to the District Court bearing on the court's sentencing decision. We assume that in some situations a prosecutor might make remarks at the sentencing hearing so inflammatory that a court would find a violation of a plea bargain not to oppose a lenient sentence, even though no express opposition had been stated. The Third Circuit so concluded in *United States v. Crusco,* 536 F.2d 21 (3rd Cir. 1976). However,

the prosecutor has a clear duty not to deceive deliberately, by words or silence, the District Court as to the nature of the offender awaiting sentence. The public interest in informed sentencing decisions is very strong. In this case, both the Government and Osborne reviewed his behavior with an eye toward Judge Van Pelt's having a thorough knowledge of the offense and the offender.

3. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

At least two circuits have considered the issue raised in this appeal. Both have found no problem with the procedure followed below. *United States v. Johnson,* 537 F.2d 1170, 1174–75 (4th Cir. 1976); *United States v. Rines,* 453 F.2d 878 (3rd Cir. 1971). In fact, *Johnson* specifically approved this approach for use on remand of the case to the district court.

The other cases cited by Osborne are not persuasive. *United States v. Williams,* 534 F.2d 119, 122 (8th Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976), is consistent with our view regarding trial on the original charges when a guilty plea is vacated. The fact that identical sentences had been imposed originally and at retrial is not crucial to the *Williams* result. *United States v. Floyd,* 519 F.2d 1031 (5th Cir. 1975), does not involve conviction of additional offenses at the second trial where a heavier sentence is imposed. Rather, *Floyd* holds improper a heavier sentence imposed by a different judge for the *same* offense.

■ Finally, we reject the contention that Osborne was sentenced for all ten offenses when he pled guilty to two counts before Judge Van Pelt. Such a practice would raise due process problems, and would certainly render nugatory plea bargains as postured in this case. A court may consider other acts of an offender as evidence that the crime of which he stands convicted was not an isolated mistake on the part of an otherwise law-abiding person. However, that is manifestly different from a situation where the offender stands convicted of numerous crimes. The Government here did not plea bargain on the second guilty pleas, and only required Osborne to stand trial or plead to all counts. "[T]he Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge v. Perry, supra* 417 U.S. at 27, 94 S.Ct. at 2102. Here there was certainly no "realistic likelihood of vindictiveness." ·

■ Osborne, after his first plea of guilty to two counts was set aside, was returned to his former position of standing with a not guilty plea to the original ten counts. He was free to stand trial or plead guilty to any of the counts or all of them, but, absent a plea bargain, was obligated to dispose of all counts by trial or plea. The Government refused at this point to bargain. This the Government had a right to do. Osborne pled guilty to ten counts, which is a substantially different plea than was originally made to two counts.

· Defendants should not be permitted to make tentative pleas of guilty to obtain a ceiling for conviction upon subsequent trials or pleas. The only due process restraint on the courts is not to be retaliatory or vindictive. The record and Judge Urbom's memorandum fully demonstrate an appreciation of the applicable precepts of law and an absence of any vindictiveness or retaliation against Osborne. The District Court, at the time of the second pleas, noticed its disagreement with Osborne's counsel's attempt to set a ceiling on the court's discretion in sentencing.

Finding no violations of defendant's due process rights, we affirm.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. As I read the record, Judge Van Pelt allowed the defendant to withdraw his plea because of his policy permitting guilty pleas to be withdrawn if: (1) they are made within a reasonable period of time after sentencing; and (2) if cause for the withdrawal is shown. I have no dispute with that policy and, indeed, there is much to be said for Judge Van Pelt's argument that handling cases in this manner results in judicial economy.

Cause was shown here for the withdrawal of the plea in that the state did not adhere to the spirit of its commitment not to object to a two-year sentence. Instead of maintaining a "neutral position" with respect to the defendant's recommendation in sentencing, the state stressed aspects of the defendant's activities which highlighted the seriousness of what he had done. The pros-

ecutor also emphasized the fact that the defendant had a record which dated back twenty years. He further noted that at the time the defendant violated the law, he was a successful businessman who was earning $1,200 a month and did not need the money from the counterfeit bills. In addition, the prosecutor did not inform Judge Van Pelt that the defendant had cooperated with the state in the manner proscribed by the bargaining agreement until a specific inquiry was made by the defendant's attorney.[1]

The question before us is whether it is proper, after the initial plea has been vacated on the defendant's motion, for a court to increase a defendant's prison sentence upon his being sentenced a second time under an indictment *solely* because he was required to plead guilty to additional counts of the indictment the second time. Although two Circuits agree with the holding of the majority on this issue,[2] I disagree. If the spirit and intent of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), are to be followed, it is necessary to conclude that it is a denial of due process for a person under these circumstances to receive a heavier sentence. Plea bargaining is a fact of life in the federal system. It will only work if pursued in the utmost good faith. To permit a prosecutor to rise additional counts when a plea is set aside in whole or part because the prosecutor failed to live up to his part of the bargain would result in defendants being punished for having succeeded in having the plea set aside.

The Supreme Court first expressed these concerns with respect to courts when, in *North Carolina v. Pearce, supra,* it stated that:

> [i]t can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a * * * court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside. * * * ["] [I]t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." *Worcester v. Commissioner,* 370 F.2d 713, 718 (1 Cir.). See *Short v. United States,* 120 U.S.App.D.C. 165, 167, 344 F.2d 550, 552.

*Id.* 395 U.S. at 723–724, 89 S.Ct. at 2080.

Later in *Blackledge*, these same principles were applied to prosecutorial conduct. The Court noted:

> The lesson that emerges from *Pearce, Colten,* [*Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)] and *Chaffin* [*Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)] is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of "vindictiveness." * * * The question is whether the opportunities for vindictiveness * * * are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case.

*Blackledge v. Perry, supra* 417 U.S. at 27, 94 S.Ct. at 2102.

The Court expressly pointed out that the rationale of the *Pearce* case was the "fear of vindictiveness." To paraphrase *Blackledge,* a person who has pled guilty to an offense is entitled to pursue his right to set aside that plea without apprehension that the prosecutor will retaliate by substituting a more serious charge for the original one, thus, subjecting him to a significantly increased potential of incarceration. *Id.* at 28, 94 S.Ct. 2098.

*Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), is not inap-

---

1. The prosecutor noted that it was his understanding that this information was adequately covered in a letter from the defendant's attorney to Judge Van Pelt.

2. *United States v. Johnson,* 537 F.2d 1170 (4th Cir. 1976); *United States v. Rines,* 453 F.2d 878 (3d Cir. 1971).

posite. There, the prosecutor stated before the plea was taken that unless Hayes pled guilty to the charge of forgery, he would be charged as a habitual criminal which would mandate a life sentence. The Supreme Court refused to declare that practice violative of the due process clause but, in doing so, noted that it was not dealing with a requirement that a prosecutor's plea bargaining agreement must be kept. *Id.* at 362, 98 S.Ct. at 667, 54 L.Ed.2d at 610. The *Bordenkircher* Court recognized that what is to be avoided is government retaliation against an accused for lawfully attacking a conviction. It stated: "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort[.]" *Id.* at 363, 98 S.Ct. at 668, 54 L.Ed.2d 610. What the government seeks to do here is to punish Osborne because he saw fit to exercise his right to have his plea of guilty set aside for the prosecutor's failure to keep his side of the bargain.

I agree that the record demonstrates that Judge Urbom did not demonstrate any vindictiveness. But the prosecutor did, and this is the evil to guard against.

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY, and McMILLIAN, Circuit Judges, En Banc.

ON PETITION FOR REHEARING EN BANC

Upon rehearing *en banc,* the judgment of the District Court is affirmed by an equally divided court. Judges GIBSON, ROSS, STEPHENSON and HENLEY vote to affirm the District Court. Judges LAY, HEANEY, BRIGHT and McMILLIAN vote to reverse.

Affirmed.