UNITED STATES of America, Appellee,

v.

Henry James JOHNSON, Jr., Appellant.

No. 75–1374.

United States Court of Appeals,
Fourth Circuit.

Argued January 5, 1976.

Decided March 31, 1976.

Joseph R. Goodwin, Charleston, W. Va. (court-appointed), (Michael I. Spiker and Goodwin, Goodwin, Bryan & Lobert, Charleston, W. Va., on brief), for appellant.

John A. Field, III, U. S. Atty., S. D. West Virginia, Charleston, W. Va. (Wayne A. Rich, Jr., Asst. U. S. Atty., Charleston, W. Va. and Michael F. Pezzulli, Third-Year Law Student, on brief), for appellee.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

This appeal presents the question whether, after a guilty plea has been vacated on appeal, a defendant may be prosecuted for charges more serious than those in his original indictment when the prosecutor was aware of the new charges at the time of the plea. We hold that trial on the new charges denies the defendant due process of law.

I

Henry James Johnson, Jr., was indicted on November 3, 1972. He was charged in count one with conspiracy to distribute heroin from June 1, 1970, to the date of indictment. Counts two and three charged Johnson with substantive violations of the Travel Act, and count four charged that the acts alleged in count one were part of a continuing criminal enterprise.[1] Johnson pleaded not guilty, and his trial was set for January 3, 1973. On that date, however, he pleaded guilty to counts one and four of the indictment, and the government dismissed counts two and three. He was sentenced on count one to 15 years' imprisonment with a three-year special parole term pursuant to 21

1. Johnson was charged with violating 18 U.S.C. § 1952 and 21 U.S.C. §§ 812, 841(a), 846, and 848.

U.S.C. § 841(b)(1)(A) and fined $25,000. On count four he was given an 18-year concurrent sentence without parole and fined $100,000. Eighteen months later, we vacated this judgment for lack of compliance with Rule 11 and remanded the case for rearraignment. *Johnson v. United States,* No. 73–2458 (4th Cir., Sept. 3, 1974).

Rather than proceed to trial on the original charges, the United States obtained a superseding indictment charging Johnson with forty-one counts of violating federal narcotics laws. Counts one, two, and three were identical to the first three counts of the 1972 indictment, and count forty-one was the same as count four of the first indictment. The remaining thirty-seven counts charged Johnson with distributing heroin and violating the Travel Act. Johnson moved to dismiss the indictment on the ground that the addition of the new counts violated due process and placed him in double jeopardy. The court denied his motion. The government then elected to try him on eight counts. Of these, only count one was identical to a count in the original indictment. A jury found Johnson guilty on seven counts. On count one, the court imposed the same punishment Johnson had received when he pleaded guilty, again sentencing him to 15 years in prison with a three-year special parole term and fining him $25,000. The punishment on the remaining six counts together with that on count one totaled 45 years' imprisonment with a 24-year special parole term and a $200,000 fine. We affirm his conviction under count one, reverse the remaining convictions, and remand for trial on counts two, three, and four of the original indictment.

## II

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held that the due process clause protects a defendant from both actual vindictiveness and the fear of retaliation for exercising his right to appeal. To implement this protection, the Court sharply restricted trial judges from imposing more severe sentences on retrial after a defendant's successful appeal. The *Pearce* principle was extended to the prosecutor in *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). There, after Perry requested a de novo trial in a court of record following a misdemeanor conviction in a magistrate's court, the prosecutor obtained a felony indictment against him based on the same conduct that was the subject of the misdemeanor charge. Noting that prosecutors have a strong interest in discouraging new trials, the Court observed that "if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante' . . . the State can insure that only the most hardy defendants will brave the hazards of a de novo trial." It therefore held "that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial de novo." 417 U.S. at 27–29, 94 S.Ct. at 2103.

*Blackledge* has been applied to facts that differ only superficially from those in the case before us. In *United States v. Jamison,* 164 U.S.App.D.C. 300, 505 F.2d 407 (1974), the court held that, after a mistrial on an indictment charging second degree murder, reindictment of the accused for first degree murder violated the due process clause, absent any justification for the second indictment. Even closer to the situation before us is *Sefcheck v. Brewer,* 301 F.Supp. 793 (S.D.Iowa 1969). There, applying *Pearce,* the court reversed a conviction on a more serious charge that was filed after the defendant had successfully challenged his guilty plea to the original charge, for which he had received less punishment.

The government argues that *Blackledge* and *Jamison* are distinguishable because in each the prosecutor knew of the offense charged in the second indictment at the time the original charge was made. Here, in contrast, the United States Attorney avers that he did not know of the crimes charged in the second indictment when the

first indictment was returned. The government relies on statements in *Blackledge*[2] and *Jamison*[3] which indicate there would have been no denial of due process if the government had shown it was unaware of the facts essential to the second indictments when the first ones were returned.

We believe, however, that *Blackledge* does not limit the application of the due process clause to the narrow bounds suggested by the government. The reference to the return of the indictment as the time for assessing the prosecutor's knowledge does not imply that some other date might not be equally critical, and the opinion does not attempt to catalog all tactics that may engender apprehension of prosecutorial vindictiveness. Rather, *Blackledge* unequivocally assures a prisoner of his right to appeal without fear that the prosecutor will retaliate with a more serious charge if the original conviction is reversed. Therefore, instead of simply assessing the prosecutor's knowledge at the time the original indictment was returned, as the government suggests, we must examine all circumstances of Johnson's situation.

■ Presumably, the government was ready to go to trial on the original indictment as scheduled on January 3, for there is nothing in the record to indicate that it sought a continuance or was entitled to one. The prosecutor concedes that he knew all of the facts essential for the new indictment before Johnson changed his plea. Moreover, he stated that he did not then seek a superseding indictment because "[he] felt that the ends of justice had been met and no further prosecution was warranted based on the plea bargain." Only after Johnson successfully challenged the legality of the proceeding in which he pleaded guilty did the government seek a second indictment containing thirty-seven more charges. During the year and a half that elapsed between the entry of Johnson's plea and the new indictment following reversal of his conviction, the government discovered no new evidence to justify the additional charges.

■ The record, nevertheless, does not support a conclusion that the prosecutor maliciously sought the second indictment, and we accept his explanation that he obtained it simply to create a stronger case for the government. *Blackledge* points out, however, that the accused need not prove he was an actual victim of retaliation. Quoting from *Pearce*, the Court reiterated that " 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation . . . ' " on the part of the prosecutor. 417 U.S. at 28, 94 S.Ct. at 2102. We conclude, therefore, that Johnson's case falls within the rationale of *Pearce* and *Blackledge*. After he successfully challenged his conviction on the first indictment, his prosecution on the increased charges of the superseding indictment denied him due process of law.

■ Accordingly, except for count one, the judgment is vacated and the case is remanded. Johnson's conviction on count one of the second indictment is affirmed because it is identical to count one of the

**2.** *Blackledge v. Perry,* 417 U.S. 21, 29 n. 7, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974):

"This would clearly be a different case if the State had shown that it was impossible to proceed on the more serious charge at the outset, as in *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500. In that case the defendant was originally tried and convicted for assault and battery. Subsequent to the original trial, the assault victim died, and the defendant was then tried and convicted for homicide. Obviously, it would not have been possible for the authorities in *Diaz* to have originally proceeded against the defendant on the more serious charge, since the crime of homicide was not complete until after the victim's death."

**3.** *United States v. Jamison,* 164 U.S.App.D.C. 300, 505 F.2d 407, 417 (1974):

"[A] charge increase might in some circumstances be justified by intervening events or by new evidence of which the government was excusably unaware at the time of the first indictment."

first indictment and the court imposed the same punishment.[4]

## III

The next question is whether on remand Johnson may be tried only on the fourth count, to which he previously pleaded guilty, or whether he may also be tried on the second and third counts, which the government dismissed after his plea. This issue involves consideration of two constitutional concepts: double jeopardy and due process.

■ The hallmarks of jeopardy are not present. A jury was not impaneled to try Johnson on counts two and three, nor did the court receive evidence concerning his guilt on these counts. *Cf. Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). A different conclusion is not required by *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). There, the Court held that the double jeopardy clause precludes a prisoner's retrial for a greater offense after reversal of his conviction of a lesser included offense. The jury's verdict, the Court ruled, implicitly acquitted him of the greater offense. *Green's* bar has been applied to the trial of a greater offense after a defendant's guilty plea to the lesser included offense has been vacated. *Rivers v. Lucas,* 477 F.2d 199 (6th Cir. 1973); *contra, United States v. Anderson,* 514 F.2d 583 (7th Cir. 1975). *Green* and *Rivers,* however, are not controlling here. Counts one (conspiracy) and four (continuing illegal enterprise), to which Johnson pleaded guilty, are not lesser included offenses of the substantive counts two and three (Travel Act violations), which the government dismissed. It is this fact that distinguishes *Green* and *Rivers.* "[T]he commission of a substantive offense

and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both." *Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954). Thus, there is no reason to conclude that the initial acceptance of Johnson's plea of guilty to counts one and four implicitly acquitted him of the separate and distinct substantive offenses charged in counts two and three. We conclude, therefore, that the double jeopardy clause does not protect Johnson from being tried on counts two and three.

If Johnson is convicted on counts two and three, there is a possibility that the punishment imposed on these counts will cause the total punishment after retrial to exceed that which was imposed on his plea of guilty to counts one and four.[5] This raises the question whether the possibility of such an increase offends the due process clause.

■ Not every increased sentence on retrial is unconstitutional. For example, in *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), the Court held that the imposition of a higher sentence on retrial by a jury that was ignorant of the first sentence did not violate the due process clause. The Court explained that sentencing by a second jury does not present the same opportunity for retaliation that may be present when the same judge imposes both the first and the second sentences. Similarly, the Court found the protection afforded by *Pearce* to be unnecessary at a trial de novo in a two-tiered court system because of the improbability of vindictiveness. *Colten v. Kentucky,* 407 U.S. 104, 112, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

■ Read together, *Pearce, Colten, Chaffin,* and *Blackledge* teach that increased

---

**4.** In a pro se submission, Johnson contends that his 1975 sentence for count one exceeded his 1973 sentence in violation of the due process clause as applied in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), because a three-year special parole term was added to the 1975 sentence. The district court committed no error in this respect. The record shows that the special pa-

role term was also imposed after Johnson's guilty plea.

**5.** Since Johnson's original sentence on count four was vacated when his guilty plea was set aside, *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), will govern the sentence that can be imposed on retrial.

sentences on retrial do not in themselves violate the due process clause. The harm which the constitution prohibits is both the likelihood of vindictiveness and the apprehension of retaliation by either judge or prosecutor which may deter a defendant from appealing his conviction because his punishment may be enlarged on retrial. *Blackledge*, 417 U.S. at 27–28, 94 S.Ct. 2098. Measured by these standards, Johnson's retrial on counts two, three, and four will not violate the due process clause, even though the inclusion of counts two and three subject him to the risk of greater punishment. Retrial on the original indictment would simply return Johnson and the government to the status that existed before Johnson pleaded guilty. Since the prosecution can only proceed on the charges that were brought before the plea, there is no opportunity for prosecutorial reprisal. *United States v. Rines*, 453 F.2d 878 (3d Cir. 1975); *cf. United States v. Anderson*, 514 F.2d 583 (7th Cir. 1975); *United States ex rel. Williams v. McMann*, 436 F.2d 103 (2d Cir. 1970).

## IV

Johnson also complains of other errors. Consideration of most of them is made unnecessary by our disposition of the case or by their obvious lack of merit. Several, however, warrant brief discussion.

 Count one charged a conspiracy beginning June 1, 1970, and continuing to November 3, 1972. Count forty-one of the second indictment charged a continuing criminal enterprise stemming from the count one conspiracy.[6] Since the Comprehensive Drug Abuse Prevention and Control Act of 1970, under which these charges were brought, did not take effect until May 1, 1971,[7] Johnson contends that these counts

apply the law ex post facto.[8] Although the conspiracy and the continuing criminal enterprise were in operation before the effective date of the statutes, many of the overt acts occurred after May 1, 1971. When a statute takes effect after a conspiracy is formed, its application to the ongoing conspiracy does not violate the ex post facto prohibition of the constitution. *United States v. Ferrara*, 458 F.2d 868, 874 (2d Cir. 1972). Since a continuing criminal enterprise, as defined in 21 U.S.C. § 848(b), is a type of conspiracy, the same rule applies. We conclude, therefore, that Johnson was not prosecuted under an ex post facto law.

 Johnson moved for a change of venue, contending that pretrial publicity unfairly prejudiced him. The articles he cites demonstrate that pretrial publicity was not recent or widespread. Sporadic articles, appearing long before a trial, cannot be deemed to preclude a fair trial. *See Wansley v. Slayton*, 487 F.2d 90 (4th Cir. 1973). Moreover, the district judge carefully examined the jurors about their exposure to pretrial publicity and on each day of the trial questioned them about their exposure to reports of the trial. These examinations revealed no prejudice. In these circumstances, the denial of the motion for a change of venue was proper.

 Johnson also moved to disqualify the trial judge, who previously had indicated he would have imposed a more severe sentence were it not for the plea bargain. The district judge's announced belief that distributing heroin deserved severe punishment did not disqualify him from conducting the retrial, and Johnson does not point to any unfairness or bias at trial. *Cf. Jordan v. United States*, 370 F.2d 126 (10th Cir. 1966). Thus, we find no error in the district judge's denial of this motion.

---

**6.** Count forty-one of the second indictment is identical to count four of the original indictment. Since Johnson's motions as to these counts present the same question and count four must be tried on remand, we will consider both motions together.

**7.** Pub.L.No. 91–513, § 704(a) (Oct. 27, 1970).

**8.** Johnson made similar motions concerning counts two and three. Since the district court did not rule on these motions and they are not properly on appeal, we decline to consider whether the conduct charged in those counts may be prosecuted under the Comprehensive Drug Act, particularly in light of the savings provision in Pub.L.No. 91–513, § 702 (Oct. 27, 1970).

In summary, we affirm Johnson's conviction on count one of the second indictment because it is identical to count one of the first indictment, and the court did not increase his punishment. We vacate his conviction on the other counts of the second indictment. On remand, the second indictment, except for count one, should be dismissed. The first indictment should be reinstated, and Johnson may be retried on counts two, three, and four of the first indictment. If he is convicted, the sentence on count four may not exceed the sentence imposed on this count when he pleaded guilty unless the conditions set forth in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), are met. If Johnson is convicted on counts two and three, neither the double jeopardy nor the due process clauses prohibit his total sentence on retrial from exceeding the total sentence imposed after he pleaded guilty.